United States Court of Appeals,

Fifth Circuit.

No. 92-2293.

R. Michael LLOYD, et al., Plaintiffs-Appellees,

v.

PENDLETON LAND & EXPLORATION, INC., Defendant-Appellant.

June 14, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, KING and DAVIS, Circuit Judges.

POLITZ, Chief Judge:

Pendleton Land and Exploration, Inc. appeals an adverse judgment in its counterclaims against R. Michael Lloyd and Bob McCormack. Because the trial court erred in declining to submit Pendleton's breach of fiduciary claim to the jury we must vacate and remand for a new trial.

*Background*

In the fall of 1985, R. Michael Lloyd, a geologist, began consulting for Pendleton, a family-owned oil and gas exploration company. Under an oral agreement they focused on a large section of Kansas made up of six areas of mutual interest. These areas, or "panels," included three identified as "Rainbow West," "Anthony," and "Clearwater/Wichita." Pendleton shared its extensive geological data base with Lloyd who, with the aid of Pendleton employees, used that information to develop a new concept for marketing and sale. When asked why they freely disclosed the company's valuable geological data to Lloyd, the Pendletons replied

that they trusted him and considered him part of the family. Lloyd described the relationship as a joint venture in which each player made contributions toward a mutually beneficial goal.

Shortly after the new concept was developed Bob McCormack joined the exploration team. He also was given access to the Pendleton data base. McCormack initially was assigned to investigate the entire Kansas region but it subsequently was agreed that for marketing purposes each panel would be developed and sold separately. In September 1986 the parties focused on "Rainbow West" and began framing a written agreement to formalize their relationship. In response to a draft submitted by Pendleton, Lloyd and McCormack, for the first time, asserted that they owed no obligation to Pendleton with regard to areas in Kansas beyond "Rainbow West" and "Anthony." Pendleton deemed this unacceptable and in a draft agreement dated January 10, 1987 included a covenant not to compete and a provision against disclosure or use of proprietary work product. This agreement, signed by Lloyd and McCormack on February 27, 1987, provided that compensation for the "various oil and gas exploration projects" would be "determined on a project by project basis" and incorporated into the contract via appendices.

The "Rainbow West" panel was sold to Texaco in September 1987 for $1.2 million. Lloyd and McCormack recommended that they next focus on "Clearwater/Wichita." Pendleton chose to develop the "Anthony" panel. While "Anthony" was being marketed, Lloyd and McCormack began an independent pursuit of "Clearwater/Wichita."

They assert that they informed the Pendletons of their action; the Pendletons disavow such notice. When the "Anthony" panel sold to Enron in March 1989, Pendleton refused to compensate Lloyd and McCormack and demanded that they cease their operations in "Clearwater/Wichita." The demand was ignored; Pendleton filed an action in federal court in Kansas. Lloyd and McCormack filed an action in Texas shortly thereafter. The Kansas action was transferred to Texas and the two proceedings were consolidated. Lloyd and McCormack were aligned as plaintiffs and Pendleton, over its objection, was aligned as defendant in the consolidated action.

Pendleton formally raised its claim for breach of fiduciary duty in the Joint Pretrial Order of August 26, 1991. In the pretrial order, approved and adopted by the court, Pendleton asserted breach of fiduciary duty three times, twice in its contentions and once in its list of contested issues. Lloyd and McCormack did not object to the pretrial order. They acknowledge that the pretrial order raised the issue of breach of fiduciary duty. In its opening statement, Pendleton informed the jury that its action involved not only breach of contract, but it also involved fairness, trust, and the relationship between consulting geologists and exploration companies. In proof of the latter it elicited testimony from the Pendletons, as well as from Lloyd and McCormack, attesting to the trust and confidence each placed in the other in the development of the Kansas properties. Lloyd characterized the relationship by stating that he did not work "for" the Pendletons but "with" them on projects designed for their

3

mutual benefit.

The magistrate judge, sitting by consent under 28 U.S.C. § 636(c), ruled that the issue of breach of fiduciary duty should not be submitted to the jury and that, as a matter of law, Lloyd and McCormack's alleged breach of contract did not excuse Pendleton's obligation to pay their compensation. The magistrate judge instructed the jury that Pendleton owed Lloyd and McCormack the compensation claimed. The jury, limited in its consideration to the parties' contractual claims, returned a verdict in favor of Lloyd and McCormack. Pendleton's Motion for Judgment as a Matter of Law or New Trial was denied. Pendleton timely appealed.

*Analysis*

Pendleton advances four assignments of error on appeal; one has merit. It first challenges the trial judge's refusal to realign it as a party plaintiff. Alignment of the parties lies in the sound discretion of the court;[1] we perceive no abuse of that discretion.

Pendleton next contends that the trial court erred in ruling as a matter of law that the alleged breach of contract by Lloyd and McCormack did not excuse the obligation of Pendleton on their compensation. This argument is foreclosed by *Hanks v. GAB Business Services, Inc.*[2] As the Texas Supreme Court has held, the critical issue is whether the obligation avoided was dependent upon or

---

[1]*Moreau v. Oppenheim,* 663 F.2d 1300 (5th Cir.1981), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982).

[2]644 S.W.2d 707 (Tex.1982).

4

correlative to the obligation allegedly breached. " "[W]hen a covenant goes only to part of the consideration on both sides and a breach may be compensated for in damages, it is to be regarded as an independent covenant, unless this is contrary to the expressed intent of the parties.' "[3] The instant case is indistinguishable from the facts in Hanks where the contract covered numerous items and contained no express language indicative of dependency. The trial court properly determined that Pendleton's obligation to compensate Lloyd and McCormack was independent of their obligation to refrain from unfair competition and the improper use of proprietary information.

Pendleton then challenges the jury instruction that it owed Lloyd and McCormack the compensation. Pendleton judicially admitted, however, that it owed Lloyd and McCormack the money, "subject to certain legal defenses." The "legal defenses" apparently was Pendleton's affirmative claim that Lloyd and McCormack breached the noncompetition and proprietary rights clauses. The trial court ruled that the obligations were independent. There was no error in this instruction.

Finally, Pendleton challenges the trial court's failure to instruct on the issue of breach of fiduciary duty. We conclude and hold that this constituted error. The issue was raised in the court-approved Joint Pretrial Order which supplanted all previous

---

[3]*Hanks,* 644 S.W.2d at 708 (quoting *World Broadcasting System, Inc. v. Eagle Broadcasting Co.,* 162 S.W.2d 463, 465 (Tex.Civ.App.—San Antonio 1942)).

5

pleadings and controlled all subsequent action in the litigation.[4] The evidence adduced at trial suggested both a fiduciary relationship and a breach. While we are mindful that the issue before the trial court was not an easy one, the seventh amendment preserves the right of parties to a jury trial unless there is "no legally sufficient evidentiary basis for a reasonable jury to find for [the] party on th[e] issue."[5] Viewing the evidence in the light most favorable to Pendleton, and drawing all inferences in its favor, we must conclude that the evidence did not point so strongly and overwhelmingly in favor of Lloyd and McCormack that reasonable jurors could not find a breach of fiduciary duty under Texas law.[6] We further conclude that the failure to instruct the jury with regard to the fiduciary duty issue may have tainted its answers to the questions posed. We therefore must VACATE the judgment of the trial court and REMAND for a new trial on all issues.

---

[4]Fed.R.Civ.P. 16(e); *United States v. Shanbaum,* 10 F.3d 305 (5th Cir.1994); *Syrie v. Knoll Int'l,* 748 F.2d 304 (5th Cir.1984).

[5]Fed.R.Civ.P. 50(a)(1); *see also Kirby Lumber Corp. v. White,* 288 F.2d 566, 573 (5th Cir.1961).

[6]*See Omnitech Int'l, Inc. v. Clorox Co.,* 11 F.3d 1316 (5th Cir.1994); *see also, Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557 (1962) (reversing summary judgment on facts similar to those presented in this case).